All right, our final case this morning is 21-6052 Brooks v. Philadelphia Indemnity. Welcome back, Philadelphia. Going first is Mr. Chavez. You may proceed when you're ready, sir. Very good, thank you. May it please the court and counsel for the insurance company. This appeal presents one simple question, and that is, is the case that we argue is the controlling law in this circuit applicable? It appears to me it's a case on all fours. This is a case in which an employee was occupying an insured motor vehicle, which is a low-level employee who didn't have anything to do with acquiring the insurance. She was involved in a wreck of an underinsured motorist and did not know that there was uninsured motorist coverage on the vehicle. So, she settled her claims against the torque carrier and subsequently learned that there was uninsured motorist coverage on the vehicle she was driving and that the uninsured motorist provisions, the policy required that she first notify the company before accepting a settlement offer. She didn't do that because she didn't know. Mr. Chavez, she knew about the Philadelphia policy, correct? Yes, she knew that there was a policy on Philadelphia Insurance Company. What she did not know was that it provided, in addition to your liability coverage, a million dollars uninsured motorist coverage. So, she did not know, obviously, that there was a policy provision that she had to comply with. Did she have some duty to examine the policy to see if it was potentially applicable? I don't think so. She's an unsophisticated low-level employee. She was represented by counsel, prior counsel, but I just can't imagine the fact that she knew that there was insurance of some kind obligated her to know that she had to notify the liability of the young carrier of the fact that she was going to make a settlement with the uninsured motorist. She never made a claim against the policy, right? In fact, as I interpret the record, there wasn't any allegation of personal injury or property damage that was ever provided to Philadelphia. We have no way of knowing what was provided to Philadelphia and what was not. We do know... Did she provide anything? No, that the wreck was reported to Philadelphia, but nothing further. We do not know what was reported to them. I guess my point is, I don't know what's important or not. I think I'm just trying to discern whether there was a claim made of a covered loss against Philadelphia, and it doesn't look like there was. There was not prior to the time that she executed the release of the torturer. There was not. And there was no way for there to be such a claim. It was simply impossible. In these circumstances, if they had no notice of potential liability, it seems that they weren't in a position to invoke their rights under Oklahoma law to take over the settlement. I just don't see how you can fault the insurance company here if they've never been told that they might have coverage. Judge, we do not seek to fault the insurance company. We do not claim bad faith and do not claim bad faith. I think both of these sides of the controversy were caught in an awkward position because she didn't know about the uninsured motorist coverage, let alone did she know that she had to comply with some policy requirement that was then unknown to her. She didn't find that out until months after the settlement with the underinsured motorist and when she consulted with me. And I made an inquiry of the company. There's a record that made contact with the company to ask them if they had uninsured motorist coverage. But until that time, I just can't imagine this unsophisticated employee driving a driver. She had a lawyer. She had a lawyer. She had a cop lawyer. That's true. She had a cop lawyer handle the settlement with the two other carriers, the liability insurance carrier for the uninsured motorist. Her lawyer had no duty to explore other potential sources of insurance coverage? Oh, Judge, I think we all wish he had of, but the fact is he didn't. But that is simply the fact. She certainly had no way to know that she was required to give some notice to her employer's insurance carrier. Nobody claims that she was aware that she even had uninsured motorist coverage, let alone had the knowledge of the provisions of policy that required her to give notice before accepting a settlement of a liability claim. And that's exactly the case in what I think is a controlling authority in the circuit for this case. No, no. In Phillips, the plaintiff tried to find out, asked about it, and was kept from that information. So it's not really on all fours. Can I ask you this question about what the insurer knew? And I may be laboring under a misperception, but I thought that this Avalon Correction Services staff report that I don't see a date except effective April 8, 2009. It's Plaintiff's Exhibit 5 below, that written out by the plaintiff as far as what happened at the accident, I thought that had gone back to the insurer. Am I wrong about that? I'm sorry, this had what? That this was sent back to the insurer. And Judge, we know that at some point, not immediately, but at some point, Avalon did report this to the insurance company. But when I talked to the insurance company the first time and wrote the letter asking them whether there was uninsured motorist coverage, they were unable to find a record that this particular vehicle had coverage of any kind. It turned out that maybe it was a newly acquired vehicle, but for some reason, it was not scheduled on the policy. So if you had a manual inquiry, she would not have received an answer from the insurance company. So no fault of the insurance company. We're not faulting them, we're blaming them. Now, the fact is, in both of these cases that have been considered by the court, that in each of these cases, these people entered into a settlement with the insurance company and Mrs. Phillips did not know that there was uninsured motorist coverage in the same way that this lady did not know that there was coverage. So, you know, it's not something that we're pointing the finger at anybody. It's simply an unfortunate circumstance that both sides find themselves in. But Phillips is exactly like this case, insofar as the injured employees had no knowledge that there was any uninsured motorist coverage. What do you propose to do about the $75,000? Are you saying that should be offset? Against the insurance proceeds? Or are you saying that the plaintiff just keeps that money on top? No, I don't. I don't think she is required or entitled to a double recovery. So yes, they certainly would have the Philadelphia would have a subrogation claim to the extent of the $50,000 paid by the uninsured motorist. I'm less clear of what the effect would be on her uninsured coverage, whether they would have an offset or entitled to subrogation. It appears she is badly enough hurt that her claim will eat up all the available coverage. They got a million, she's recovered $75,000. If the damages are ultimately found to be as much as $1,075,000, then nobody's entitled to their money back. Counsel, would you agree that there was nothing that prevented Ms. Brooks from finding out the terms of the Philadelphia policy, given that she was aware from the collision report that there was a policy? No, I don't think she could have been made aware of the provision of the policy that she was required to submit a settlement proposed by the tort treasurer. She would have gotten the same response from the lady at Philadelphia Insurance Company that I got, which is, we'd only find this vehicle on our policy. This vehicle is not named on our policy. There was a reason, I'm sure, that they ultimately concluded that there was coverage. I suspect it's because it was a newly acquired vehicle, but I don't know that that is true. Just a quick procedural question. Is Ms. Brooks appealing only the district court's Rule 59e order? Yes, I think so, Judge. This is kind of a strange case. I got that order sustaining a motion for a summary judgment and was just astounded that the case was not covered by Phillips. As a result, I made the decision that we owed it to this judge to call his attention to the fact that, at least on our reckoning, the case was controlled by Phillips. Therefore, he had committed an error. Now, that may have been an error of judgment on my part, but the fact is, if the insurance company, if the court made an error of law in overruling the summary judgment, then the court should have sustained my Rule 59e motion, very specifically, that if there's an error of law, then there is a problem with the court having failed to follow that law. I hope we would have won an appeal by doing that. It didn't work out that way, but that's where we are. All right, counsel. Thank you. Your time has expired. Let's hear from Mr. Fitz. May it please the court and counsel, my name is Grant Fitz on behalf of Philadelphia Indemnity Insurance Company. I believe what we're here to discuss is whether or not there was an abuse of discretion in the denial of the appellant's request to alter their previous granting of a summary judgment based on the Porter Doctrine. I agree with Mr. Travis that there are two controlling cases that justify Judge Goodwin's decisions, that being the Porter case and the Porter Doctrine, and then specifically Phillips. As Porter stands for the notion that an insured is precluded from bringing an action on a UM, whether that's underinsured or uninsured motorist policy, to the extent the insured voluntarily and knowingly made settlement with and gave a general release to the tortfeasor, barring the exercise of the insurer or the insurance company's subrogation rights. As Judge Timkovich correctly pointed out and Mr. Travis admitted, Ms. Brooks knew that there was an insurance policy in effect at the time of the accident. And so for purposes of applying Porter, Judge Goodwin correctly found that there was a subrogation rights against the tortfeasor. That settlement was made in February of 2017 and an official claim against Philadelphia was not made until July or August of 2017. The key question is what, if anything, did Ms. Brooks do to notify Philadelphia about a potential claim prior to that time, the time of the settlement, such that Philadelphia could protect its subrogation rights? Counsel, doesn't it come down to what is meant by knowingly? And how could Ms. Brooks knowingly have violated Philadelphia's subrogation rights when she didn't know the terms of the she knew about the UM coverage? I think that the case law doesn't require her knowledge of the intricacies of the provision, but rather, as we stated in our brief, the knowledge of the existence of a policy and the ability that she would have to then investigate further. Well, Counsel, there's language in our Phillips opinion. I know that says that every case Porter cited, and I quote, involved an insured who settled with full knowledge of the policy terms and the insurer's subrogation rights. Now, that goes beyond just knowing about a policy. Your Honor, what I would argue is that each of the cases that were cited in Phillips as persuasive involve some kind of action that the insured, either themselves or by virtue of their attorney, have taken to investigate further, which is completely lacking in this case. And I think to cite Phillips, some language that I found very helpful is found at paragraph 1224. And I think, to be honest with you, the first part of this argues in favor of Brooks, but then it's clarified it says in a commercial business policy that covers employees, the UM UIM insurer may also have a duty to inform an injured employee insured who may be ignorant of potential coverage and contract terms of its right to contractual or statutory subrogation. If the insurer or insurance company wishes to later to exercise that right, citing the up to graph case. However, just further down, they say at the very least, this is in Phillips, the insurer has a duty to properly produce a policy. And then here's the key on request to an injured. So we have two things there. One, we have a request that was never made in this case that distinguishes the facts in our case from Phillips, but to an injured employee, there is no evidence that Philadelphia ever had colorable claim under the policy so that the employee may ascertain whether he, she is covered and what responsibilities he has under the contract. And I think this goes to the second part of what judge Timkovich touched on, which is she never made a claim. And in Phillips, they cite that there has to be a quote, colorable claim that is being made by the insured. That overstates it. That overstates it. What you just read says at the very least, and then it goes with a colorable claim. It doesn't make it a requirement on the employee. And it's just all that I get out of that paragraph is that it's an open question, just how much the next court is going to require out of that insurance company based on its knowledge. And I think one of the big distinctions, Your Honor, between Phillips in this case and some of the others that we will get to is in Phillips, there was not going to be a reward, so to speak, under the Porter doctrine to an insurance company to deny a lawsuit if they have taken some kind of intentional act or withheld information from its insureds. And there has been no evidence in this case, in this appeal, I'm sorry, that there was any withholding of information by Philadelphia to Mrs. Brooks or her attorneys about her UM or UIM benefits. And so when you look at, for example, the Strong case, I think is another case that was cited. Again, in that case, Hanover Insurance had knowledge of a mediation that was taking place and had knowledge of an injury. Again, a claim had been made. The McFadden case that was also cited, again, the insurance company in that case had knowledge of injuries to its insured. And then lastly, counsel, counsel, you keep referring to knowledge of the insurance company, but the but the requirement is that the insured Brooks knowingly violated Philadelphia's subrogation rights. And it seems almost as if I've not seen an allegation or even an argument that she had actual knowledge. Are you saying that she had constructive knowledge? We are arguing that she did have knowledge by virtue of two separate pieces of evidence that were cited in the appeals. The first was on appendix page. It was the police report. Well, that's the collision report, but that doesn't contain the terms of the policy. So are you imputing to her knowledge of the terms of the policy because she knows there's a policy? And then I'm back to constructive knowledge. We're arguing that she had the ability to make a claim to Philadelphia that would have given it the ability to step in her place in the event of a settlement. Yeah, I understand your argument. And and but it seems like that's an extension of Phillips, not not an application of Phillips. This doesn't seem like it's on all fours with that case. We argue that Phillips is controlling authority along with the Porter Doctrine, but of course, it's controlling authority, but it's a different case. There was inquiry by the insured as to what was in the policy and they didn't get the information here. There was that didn't happen. Correct. And so I believe that Phillips stands for the position that if the insured has that knowledge of the policy and tries to get information from the insurance company that they're not given it, then they're obviously therefore the insurance company cannot exclude a lawsuit under Porter. Let me let me let me let me restate what I the question that would be helpful for me, and that is Philadelphia believes under Phillips that the insured policyholder has a duty to investigate, basically a duty to read the insurance contract. Once they know about a insurance contract, they have a duty to read. And if they don't, which occurred here, then the terms of the policy are going to be imputed to that that insured, basically a constructive knowledge theory. I mean, is that where we end up here? I think that takes it further than than our argument. It's it's that if there's simply a knowing involuntary waiver, she has knowledge of an insurance policy that would cover her and to the extent that she hasn't she has an option on whether or not she wants to make a claim for you and benefits, which carries its own issues. And so she has knowledge of that, that she can make a claim to. So likewise, if she has knowledge of that policy, she only has knowledge that she can make claim is if we impute to her the specific term in the in the policy. I believe that that's that's the part of knowing involuntary to protect our interest if she has the option of making a claim on you and benefits or not. And she makes the decision not to. That's fine. That's her. That's knowing that it is an option. Porter stands for the position that she has an obligation to protect those subrogation interests of Philadelphia, which in this case she didn't do. And I think it's an important point that she was represented in this case, similar to other cases by an attorney and was seeking payment on you from her own personal carrier and triple A and State Farm. And so she and or her attorney were in a position to protect the interests of Philadelphia and chose not to. It seems like, you know, why do you resist reading into Phillips reporter a duty to read the policy? I mean, you see, you just you don't want to go there. And I wonder why not? Well, the that Phillips stands for the position that or Porter that they have to read the intricacies of the policy. I think it's just that they have the policy available. The policy is clear on what the requirements are that they have to notify their U.N. carrier in the event of a settlement. And that's the choice by their admission in her knowing about the policy and not making a claim is what destroyed Philadelphia's subrogation rights. Council, can I let me just redirect you to because you're running out of time to the to this sentence from Phillips 1223 actual, not just theoretical prejudice as a necessary element of a Porter defense. And then right after that, the court says because the insurer did not any undisputed facts to establish that it was actually injured by Miss Phillips conduct, it failed to satisfy its summary judgment burden. Why isn't that our case? Sounds just like it. In our case, we did allege prejudice in her signing the settlement agreements against a tortfeasor. And so we're precluded now and prejudiced by the settlement because we can no longer step in the shoes that she would have against that tortfeasor. So we have alleged different from Phillips actual prejudice because those settlement agreements and settlement amounts were were were done months before Philadelphia had any idea that there would be a claim on its U.N. policy. So it would be wrong to read actual prejudice as meaning that you actually suffered some sort of a harm that the waiver of the subrogation affected you, A, because you would have asserted the subrogation or B, because you could have collected something that route. I believe that's correct. And I want to cite to I think in agreement, obviously, with with Judge Goodwin, and it is what knowledge did Philadelphia have when a claim was made by Miss Brooks and her attorney? I don't believe that the the analysis is appropriate on whether or not coverage was eventually offered or not, because there was no different from some of these other cases. There was not a rejection of coverage. That has never been the position. So what Philadelphia for the very first time knew in late 2017 was that there was going to be a claim that there was a settlement and that there was injury. And so I still you keep talking about Philadelphia's knowledge, but doesn't this turn on Miss Brooks knowledge, not not Philadelphia's knowledge? What is her knowledge when she entered into the settlement agreements? You are you are absolutely correct. I think what I'm doing is looking at some of these other cases, such as the strong case McFadden Robertson, that where courts failed to apply the Porter doctrine to insurance companies because there had been some knowledge by them that there was going to be a claim. You are absolutely correct. Correct. And I believe that that is why Porter applies here is because Miss Brooks knew and had a knowing and voluntary understanding of an insurance policy that she could have made a claim on as early as 2015 and yet through her attorney and herself decided not to make that claim until months after when Philadelphia's subrogation rights had been destroyed. And so the Porter doctrine would apply. Phillips is distinguishable, which is why we argue for Judge Goodwin's rulings to be upheld. Thank you, counsel. Time's expired. We appreciate the arguments by this morning. Your excuse and cases submitted. The court will be in recess until nine o'clock tomorrow. And if the panel could hang on here for a few minutes after counsel drops off, I'd appreciate it. Thank you. Thank you. Thank you, honors.